IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANGELINA DAVIS              :       CIVIL ACTION
                            :
        v.                  :
                            :
CITY OF PHILADELPHIA        :       NO. 10-2646


MEMORANDUM

McLaughlin, J.                                  September 29, 2011


        This is a section 1983 suit brought by Angelina Davis,
both individually and as administratrix of her husband's estate,
arising from a construction accident in which her husband,
Derrick Alston, was killed.  Alston, a private contractor, was
installing a new water supply at a home in Philadelphia when his
boring device contacted an underground power line operated by
PECO Energy Company, electrocuting and killing him.

        The plaintiff's section 1983 claim is based on a state-
created danger theory of substantive due process.  The plaintiff
claims that the City of Philadelphia Water Department did not
ensure compliance with the Pennsylvania One Call Statute, thus
allowing Alston to dig into the electrical line.

        The defendant moved for summary judgment pursuant to
Federal Rule of Civil Procedure 56.  The Court will grant the
defendant's motion.

I.   <u>Summary Judgment Record</u>

        The parties do not dispute the facts which give rise to this case.

    A.   <u>Pennsylvania's "One Call System"</u>

        The Commonwealth of Pennsylvania has established the "One Call System" to alert utility providers when construction work is performed in Pennsylvania.  Pursuant to the Underground Utility Line Protection Act (the "One Call Statute"), any person performing excavation or demolition work must "provide the One Call System with specific information to identify the site so that [utility] owners might provide indications of their lines." The One Call System alerts utility providers, who must go to the construction site and mark the locations of underground utility lines.  73 P.S. §§ 177(5), 180(2.2), 178(1.2).

    B.   <u>The City of Philadelphia Water Department</u>

        In June of 2008, the Deputy Commissioner of Operations for the City of Philadelphia ("the City") Water Department was Debra McCarty.  Despite McCarty's knowledge of the One Call System, the Water Department did not verify that permit applicants had complied with the One Call Statute.  Pl. Ex. B ("McCarty Dep.") 6:3-11, 36:16-39:7, 39:24-40:4.

        Employees of the Water Department were also aware that it was illegal to dig without notifying the One Call System.

Employees, however, did not ensure compliance with the One Call System before performing work on behalf of the City at a construction site.[1]  McCarty Dep. 40:10-12, 41:13-42:6; Def. Exs. E ("Maisonet Dep.") 59:7-60:14; F ("Cintron Dep.") 41:17-42:2, 43:12-16.

      C.   <u>Events at 4218 Parrish Street on June 3, 2008</u>

On June 3, 2008, Alston was performing plumbing work on behalf of a private contractor at 4218 Parrish Street.  The work included installation of new water service to the home.  Two ditches were dug, one near the street to access the main water supply and another near the house.  Copper piping was to run between the two.  Maisonet Dep. 51:2-17; Def. Exs. A ("Medical Examiner's Rep.") at 1, B ("PECO Rep.") at 3; H.

The City Water Department issued a permit for the work performed at 4218 Parrish Street.  On June 3, 2008, two employees

---

[1]    After Alston's death, the Water Department instituted a new policy.  Water Department employees must now verify that there has been compliance with the One Call System.  McCarty Dep. 41:8-51:7.  Evidence about the new policy would not be admissible under rule 407 of the Federal Rules of Evidence which says that remedial measures taken after an injury are "not admissible to prove . . . culpable conduct."  Evidence considered at summary judgment must be admissible or capable of being reduced to admissible evidence.  Fed. R. Civ. P. 56(c)(1)(A).  Therefore the Court does not consider the new policy in this analysis.

from the Water Department were summoned to 4218 Parrish Street to shut down the main water supply and attach a "saddle" and "ferrule" to the water main.  The saddle attaches to the main water supply.  The ferrule attaches to the saddle and is an on/off switch to which the copper piping running to the house is attached.  The Water Department employees did not engage in any digging at the site.  They installed the saddle and ferrule, and were preparing to depart when the incident occurred.  McCarty Dep. 29:4-7; Maisonet Dep. 21:16-25, 23:2-4, 48:5-18, 55:12-24, 67:9-17; Cintron Dep. 14:3-9, 22:4-16, 32:14-17.

After the ferrule was attached to the main water supply, Alston entered the ditch carrying a boring device in order to tunnel an underground passage for the copper piping. Shortly after being activated, the boring device struck an underground high-voltage electrical power line operated by PECO. Alston was electrocuted and found dead inside the ditch. Maisonet Dep. 52:8-12, 67:9-22; Medical Examiner's Rep. 2; PECO Rep. 3-4.

There is no record of any call to the One Call System for work performed at 4218 Parrish Street.  PECO never received notification from the One Call System and did not mark the

locations of its utility lines at the 4218 Parrish Street site.
The City Water Department employees did not check for compliance
with the One Call System prior to issuing the permit or
installing the saddle and ferrule.  PECO Rep. 3-5; Maisonet Dep.
59:7-60:14; Cintron Dep. 41:17-42:2, 43:12-16.

II.  <u>Analysis</u>[2]

        Section 1983 provides a remedy when a person acting
under color of state law violates another's constitutional
rights.[3]  The parties do not dispute that the City Water
Department employees were state actors.  The only question at
issue in this case is whether their conduct deprived the

---

[2]    A party moving for summary judgment must show that there are
no issues of material fact and that judgment is appropriate as a
matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears
the initial burden of showing that there are no issues of
material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323
(1986).  Once a properly supported motion for summary judgment is
made the burden shifts to the non-moving party, who must set
forth specific facts showing that there is a genuine issue for
trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250
(1986).

[3]    The relevant part of the statute says: "Every person who,
under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United
States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the party injured."
42 U.S.C. § 1983.

plaintiff of a right secured by the Constitution of the United States.  The plaintiff alleges that Alston was deprived of his substantive due process right under the Fourteenth Amendment to be free from a state created danger.[4]

  A. <u>The State-Created Danger Theory</u>

   The state does not have an affirmative obligation to protect its citizens from private harm.  <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 197 (1989).  In <u>DeShaney</u>, the Supreme Court held that Joshua DeShaney's substantive due process rights were not violated when state social services failed to remove him from his father's custody following reports of physical abuse.  Joshua ultimately suffered extensive brain damage following a severe beating by his father.  In finding no constitutional violation, the Court held that the Due Process Clause is "a limitation on the State's power to act,

---

[4] In her complaint, the plaintiff included a reference to the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651 et seq., which neither party addressed in the present motion. The Court requested at oral argument that the plaintiff inform the Court within a week if she believed OSHA created a private right of action which would support a section 1983 claim.  Tr. of Oral Arg. 9/19/11 3:15-5:3.  Because the Court did not receive any additional information from the plaintiff, the Court assumes that OSHA does not support a section 1983 claim and the plaintiff's claim is limited to the alleged constitutional deprivation discussed here.

not . . . a guarantee of certain minimal levels of safety and security." Id. at 193, 195.

There is also no constitutional guarantee to a safe working environment.  In Collins, the wife of a state employee brought a section 1983 claim after her husband died of asphyxia while working in a sewer lacking adequate ventilation.  Following the reasoning of DeShaney, the Court declined to find a constitutional violation and held that there was no duty on the party of the state to provide its workers with safe working ocnditions.  Collins v. City of Harker Heights, 503 U.S. 115, 126, 129 (1992).

There are, however, exceptions to the DeShaney rule. In DeShaney, the Court held that while the state "may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."  From this language, courts have concluded that state actions which create danger or render a person more vulnerable to harm can be the basis for a Fourteenth Amendment claim.  Deshaney, 489 U.S. at 201; Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996).

The Court of Appeals for the Third Circuit first

recognized the state-created danger exception in <u>Kneipp</u>.  The
court created a four-part test, which has been modified and
clarified by later cases, to determine if the state-created
danger exception applies.  <u>See</u> <u>Rivas v. City of Passaic</u>, 365 F.3d
181, 202-03 (3d Cir. 2004) (Ambro, J., concurring).  The current
elements of a state-created danger claim are:

> (1) the harm ultimately caused was foreseeable and fairly
> direct;
> (2) a state actor acted with a degree of culpability that
> shocks the conscience;
> (3) a relationship between the state and the plaintiff
> existed such that the plaintiff was a foreseeable victim of
> the defendant's acts, or a member of a discrete class of
> persons subjected to the potential harm brought about by the
> state's actions, as opposed to a member of the public in
> general; and
> (4) a state actor affirmatively used his or her authority in
> a way that created a danger to the citizen or that rendered
> the citizen more vulnerable to danger than had the state not
> acted at all.

<u>Bright v. Westmoreland Cnty.</u>, 443 F.3d 276 (3d Cir. 2006)
(internal quotations omitted).

    Notably, the Supreme Court has cautioned that the "Due
Process Clause does not purport to supplant traditional tort law
in laying down rules of conduct to regulate liability for
injuries."  State-created danger claims should not transform
common law torts into constitutional violations.  <u>Collins</u>, 503
U.S. at 128 (internal quotations omitted); <u>Kaucher v. Cnty. of</u>

Bucks, 455 F.3d 418, 435 (3d Cir. 2006).

  B. <u>The Plaintiff's State-Created Danger Claim</u>

    The defendant focuses its argument on the second and
fourth prongs of the <u>Kneipp</u> test.  The plaintiff argues that
genuine issues of material fact have been raised as to all four
prongs, but likewise address only the second and fourth.

    The Court agrees with the defendant.  Based on the
facts of this case, no reasonable jury could conclude that Alston
was deprived of his constitutional right to be free from a state-
created danger.

    1. <u>The Affirmative Action Element</u>

    The parties dispute whether the City's actions in this
case were affirmative acts or merely omissions.  While the
distinction between an act and omission is notoriously difficult
to define, the Court of Appeals's decisions provide instructive
guidance.  The court has found affirmative acts when the
government intervenes in a way so as to make the individual more
vulnerable to harm.  <u>See, e.g.</u>, <u>Kneipp</u>, 95 F.3d 1199; <u>Rivas</u>, 365
F.3d 181.  In contrast, the court has declined to find
affirmative acts when the state failed to intervene to prevent

harm to an individual.  See e.g., Kaucher, 455 F.3d 418; Bright
v. Westmoreland Cnty., 443 F.3d 276 (3d Cir. 2006), D.R. v.
Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364 (3d Cir.
1992).

        a.  Cases With Affirmative Acts

        In Kneipp, the court found that police officers created
a greater danger to Mrs. Kneipp which had not existed before they
intervened.  The officers stopped Mr. and Mrs. Kneipp as they
were walking home from a bar.  After questioning Mr. Kneipp, the
officers allowed him to proceed home to relieve a babysitter.
Mrs. Kneipp, who was visibly intoxicated, remained with the
officers.  The officers knew of Mrs. Kneipp's intoxicated state
and need for assistance walking home, but they sent her home
alone on foot.  Several hours later, Mrs. Kneipp was found
unconscious at the bottom of an embankment across the street from
her home.  As a result of exposure to the cold, she suffered
brain damage impairing many bodily functions.  Based on these
facts, the Court of Appeals found sufficient evidence that the
officers used their authority to "create a dangerous situation or
make [Mrs. Kneipp] more vulnerable to danger had they not
intervened."  The court held that the plaintiffs could establish

a constitutional claim under the state-created danger theory. Kneipp, 95 F.3d at 1201-03, 1209-11.

Likewise in Rivas, the court held that state EMT's created a danger to Rivas, a seizure patient, by unnecessarily calling for police, misrepresenting the patient's aggressiveness to the officers, and failing to inform the police that seizure patients should not be retrained.  Two EMT's were responding to a 911 call when the patient, Rivas, moved towards one of the EMT's, possibly threatening her.  The EMT's called for police, and may have misrepresented that Rivas attacked them.  The EMT's also failed to inform the police that seizure patients should not be restrained.  The police attempted to restrain Rivas, during which a struggle ensued and Rivas was struck repeatedly.  While the police were improperly carrying Rivas on a stretcher, he fell to the ground and died a short time later.  The court held that "were it not for" the EMT's summoning police officers, misrepresenting the danger posed by Rivas, and failing to ensure that proper medical procedures were followed, Rivas may have recovered from his seizure without incident.  Rivas, 365 F.3d at 185-88, 197.  These were sufficient affirmative acts to meet the fourth prong of the Kneipp test.

11

b.   <u>Cases Lacking Affirmative Acts</u>

In <u>Kaucher</u>, the court refused to find affirmative actions based on a state employee's claim that the prison where he worked should have done more to contain the spread of an infection.  The court found that there was no affirmative action when prison officials failed to improve conditions at the jail.  There were also no affirmative acts when prison officials did not warn inmates and officers about the infection or procedures to prevent its spread.  <u>Kaucher</u>, 455 F.3d at 432-35

In <u>Bright</u>, the court declined to find a state created danger when police officers failed to arrest or revoke the probation of a convicted offender who had violated the terms of his probation by contacting the plaintiff's daughter.  Officers assured the plaintiff that immediate action would be taken, but none was.  The man then shot and killed the plaintiff's other daughter.  The Court of Appeals held that the plaintiff's constitutional rights had not been violated, because he could point to no affirmative action on the part of the state which placed his daughter in greater danger than she would have been absent that state action.  The state's failure to intervene did not create a danger to the Bright family nor prevent them from

12

acting to protect themselves.  Bright, 443 F.3d at 279, 284-85.

In D.R., two female high school students brought a section 1983 claim against several school teachers and administrators following months of repeated physical and sexual abuse by male students.  The court found that the administration made many errors.  They failed to report known incidents of abuse to parents or other authorities, decided to put the plaintiffs' class under the supervision of an inadequately trained student teacher, failed to ensure compliance with school rules, and failed to investigate and stop the abuse.  Although a close case, the court determined that these were not affirmative acts.  The defendants' behavior did not create or increase the plaintiffs' risk of harm from the other students.  Rather, the defendants failed to intervene to prevent that harm.  This was insufficient to meet the affirmative action prong.  D.R., 972 F.2d at 1373-77.

c.   Affirmative Acts Alleged in this Case

The plaintiff argues that in this case, the City Water Department acted affirmatively in two ways.  First, the Water Department granted a permit which allowed excavation at the construction site, knowing that such excavation would occur, without determining whether the permit holder had complied with

13

the One Call Statute.  The plaintiff further contends that the Water Department acted affirmatively by installing the saddle and ferrule on June 3.  Without the installation of the ferrule, the plaintiff argues, Alston would not have been able to install the copper piping, would not have been tunneling underground, and would not have encountered the live electrical line which killed him.

The crux of the plaintiff's suit is that the City Water Department did not intervene to ensure that the private contractors working at 4218 Parrish Street complied with the One Call System.  The issuance of the permit and the installation of the ferrule did not themselves put Alston in any danger.  Rather, the plaintiff relies upon the failure of the Water Department to confirm compliance with the One Call System before taking these actions.  These are failures to act.  The danger to Alston existed because there had not been compliance with the One Call System.  The state actors did not create or increase that danger. They failed to take steps to ameliorate it.

The Supreme Court was clear in DeShaney that failure of state actors to perform even required duties is not sufficient to demonstrate an affirmative act.  The affirmative action

14

requirement looks for some egregious action on the part of state actors.  As the Court of Appeals explained, "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."  <u>Bright</u>, 443 F.3d at 282.

The state actors here did not have an obligation to ensure compliance with the One Call System nor did they misuse their authority to expose Alston to danger, as was the case in <u>Kneipp</u> and <u>Rivas</u>.  In <u>Kneipp</u>, the police knew Mrs. Kneipp was too intoxicated to care for herself, yet they removed her husband's protection and sent her home alone.  In <u>Rivas</u>, the EMT's knew of the danger of restraining seizure patients but, through their representation of the situation, encouraged the police to restrain Rivas.  The plaintiff's situation is much more like the plaintiffs in <u>Kaucher</u>, <u>Bright</u>, and <u>D.R.</u>  By issuing the permit and installing the saddle and ferrule, the Water Department became part of the chain of events that led to Alston contacting the electrical cable, but did not make that event more likely to happen.

The plaintiff attempts to distinguish <u>Kaucher</u> on the grounds that "this is not a case in which the plaintiff is a public employee suing for unsafe working conditions."  Pl. Mot.

12.  However, that fact does not adequately distinguish Kaucher.
If anything, the plaintiff in Kaucher, who was a state employee,
had a better argument that the state exposed him to danger in his
workplace by failing to prevent the spread of infection in the
prison.  Here, Alston was exposed to unsafe working conditions in
a private employment context.

Because "failures to act cannot form the basis of a
valid § 1983 claim," and the plaintiff's evidence points only to
a failure of City employees to intervene to protect Alston, no
reasonable jury could determine that this element of a state
created danger has been met.  Kaucher, 455 F.3d at 434 n.11.

2.   The Shocks-the-Conscience Element

In County of Sacremento v. Lewis, 523 U.S. 833 (1998),
the Supreme Court held that a section 1983 plaintiff must show
that the state actor's conduct rose to a level of culpability
which "shocked the conscience."  To prevail on a state-created
danger claim, the plaintiff must demonstrate more than negligence
or harmful behavior, which are "categorically" insufficient to
shock the conscience.  Id. at 848-49.

The test for what shocks the conscience differs
depending on the circumstances of the case.  Rivas, 365 F.3d at

16

195.  In a situation such as this, where the state actor has the "luxury of proceeding in a deliberate fashion . . . deliberate indifference may be sufficient to shock the conscience." Estate of Smith v. Marasco, 430 F.3d 140, 153 (3d Cir. 2005).  The test is whether the defendant "consciously disregarded, not just a substantial risk, but a great risk that serious harm would result." Rivas, 365 F.3d at 196 (quoting Ziccardi v. City of Philadelphia, 288 F.3d 57 (3d Cir. 2002)); Ye v. United States, 484 F.3d 634, 639 n.2 (3d Cir. 2007).

The Court concludes that no reasonable jury could find that this standard has been met.  The plaintiff has offered no evidence to show that City employees were aware of a great risk of serious harm in issuing permits or installing ferrules, and thus no evidence that the defendant "consciously disregarded" a risk.  No past injuries or deaths put the Water Department on notice that it was contributing to hazardous conditions.  Nor is there any evidence that the defendant was aware that the contractors at 4218 Parrish Street had not complied with the One Call System.

Additionally, the Supreme Court explained, "only the most egregious official conduct can be said to be arbitrary in

the constitutional sense." <u>Lewis</u>, 523 U.S. at 846 (internal quotations omitted).  In addition, factfinders must "evaluate defendants' decisions at the time they were made." <u>Kaucher</u>, 455 F.3d at 428.

The failure of the defendant to investigate compliance with the One Call System does not amount to "egregious official conduct." <u>Lewis</u>, 523 U.S. at 846.  There is no evidence that the Water Department had a duty to ensure compliance.  In asking whether state actors' decisions were "arbitrary in a constitutional sense," there is a presumption "that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces." <u>Collins</u>, 503 U.S. at 128-29. It is appropriate to consider that the Water Department serves a different purpose and function than the One Call System. "Decisions concerning the allocation of resources to individual programs . . . must be made by locally elected representatives, rather than by federal judges." <u>Id.</u>  The City of Philadelphia did not charge the Water Department with ensuring compliance with the One Call System.  This Court will not second guess that decision.

C.    <u>The City's Liability</u>

Because the Court concludes that the plaintiff has not alleged a constitutional violation, an examination of the City's liability for the actions of its agents is not necessary.  <u>See</u> <u>Collins</u>, 503 U.S. at 120; <u>Kaucher</u>, 455 F.3d at 423 n.2.

An order shall issue separately.